Commonwealth ex rel. Hudson, Appellant, *v.* Burke.

Submitted October 12, 1953. Before RHODES, P. J., HIRT, RENO, ROSS, GUNTHER, WRIGHT and WOODSIDE, JJ.

*Benjamin Hudson,* appellant, in propria persona.

*A. Leon Higginbotham, Jr., Samuel Dash,* Assistant District Attorneys, *Michael von Moschzisker,* First Assistant District Attorney and *Richardson Dilworth,* District Attorney, for appellee.

OPINION BY WOODSIDE, J., March 16, 1954:

Relator, Benjamin Hudson, filed a petition for writ of habeas corpus in the Court of Common Pleas of Philadelphia County. After a hearing on the petition, at which the relator appeared, represented by counsel, the writ was refused. This appeal was then taken.

Relator is now serving a term of 35 to 70 years in the Eastern State Penitentiary for the crimes of armed robbery, burglary, operating automobiles without the consent of the owners, and carrying firearms without a license. He was tried for and convicted of these crimes before a judge and jury in the Court of Oyer and Terminer of Philadelphia County. Sentence was imposed on February 13, 1941. Less than seven months before he had been released from the penitentiary after serving five years there.

Relator contends that his conviction was null and void because he was insane during the commission of the crimes, and during his trial and sentencing.

Neither the relator, nor his court-appointed counsel raised the issue of insanity or mental illness at the time of the trial in 1941. There is likewise no evidence that relator manifested any *signs* of insanity or mental illness at the time of trial and sentencing, unless the commission of these offenses would of themselves be considered such.

The relator seeks to base his allegations of insanity upon the following facts: On March 11, 1941, subsequent to his incarceration in the Eastern State Penitentiary, he was sent to its Department of Neurosychiatry because of his destructiveness in his cell and his complaints of "head pounding" and "nervousness". On April 22, 1942, over one year later, he was committed pursuant to a lunacy commission's order to the Farview State Hospital for the Criminal Insane. At that time he was found to have a "psychosis with psychopathic personality." On January 4, 1948 relator's

case was reviewed and it was found that he was then without psychosis and he was considered no longer in need of further care and treatment in the State Hospital. He was accordingly returned to the Eastern State Penitentiary on January 31, 1947, by court order.

It is well settled that "In criminal, as in other matters, sanity is presumed . . . The presumption of sanity, which is the normal condition of man, 'holds good, and is the full equivalent of express proof until it is successfully rebutted' ". *Commonwealth v. Iacobino*, 319 Pa. 65, 68, 178 A. 823 (1935).

The lower court after hearing the relator's evidence concluded he had not rebutted this presumption as to the periods in question to wit: the time of commission of the crime, the time of arraignment, and the time of trial. The evidence warranted this conclusion.

In *Commonwealth ex rel. Mulligan v. Smith,* 156 Pa. Superior Ct. 469, 475, 40 A. 2d 701 (1944), the Court held that, "Whether a man was sane or insane at the time of the commission of a crime, or at the time of his arraignment or trial, is not to be fixed and determined by a prior adjudication made months before, followed by treatment in a hospital for mental diseases, and resulting in a recommendation for his discharge prior to the commission of the criminal act."

A fortiori, would we be warranted in concluding that this relator's subsequent adjudication of insanity is proof that he was insane at times prior thereto, when he committed the crimes, or when he was arraigned? Certainly, standing alone evidence of insanity at one time does not establish insanity at some prior time.

The lower court's conclusion is further buttressed by the fact that just as the relator was an inmate of the Eastern State Penitentiary subsequent to February 13, 1941, he had also been an inmate there from 1935 to July 15, 1940. During this lengthy period no steps were taken to bring about an adjudication of insanity.

244

It would seem reasonable to assume that had the relator, during this period of incarceration, manifested psychopathic tendencies the very same medical department of the very same institution would have taken the steps they found necessary subsequent to February 13, 1941.

The lower court was justified in concluding that the evidence presented to it does not warrant the issuance of a writ of habeas corpus.

Order affirmed.