Commonwealth *v.* Updegrove, Appellant.

600

Argued November 12, 1963. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Alvin A. Woerle,* with him *John E. Ruth,* and *Ruth, Weidner, Woerle & Yoder,* for appellant.

*Peter F. Cianci,* First Assistant District Attorney, with him *Frederick O. Brubaker,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE EAGEN, March 17, 1964:

The appellant, Miriam D. Updegrove, was indicted and tried for the murder of her husband. The jury returned a verdict of guilty of murder in the first degree, and fixed the punishment at life imprisonment. A motion for a new trial was dismissed and sentence imposed in accordance with the verdict. From the judgment, this appeal is prosecuted.

While the sufficiency of the evidence to sustain the verdict is not questioned, we have carefully studied the record and determined that the necessary ingredients of murder in the first degree were established beyond a reasonable doubt. From the testimony, the jury was

warranted in finding that the defendant intentionally fired two shots into vital parts of her husband's body from a .22 calibre revolver, of single action, which had to be cocked each time it was fired, and that the decedent was lying flat in a prone position in his bed, covered with a sheet, when the shots were fired, and that one of the bullets entering the body caused wounds resulting in death.

At the trial commencing on June 12, 1961, the defense was based solely on insanity. The defendant testified that she remembered nothing about the shooting. Other witnesses called on her behalf described her conduct and appearance for a period of time before and after the occurrence, which tended to show a highly emotional and upset individual. Two medical doctors, who specialize in the field of psychiatry, stated that in their opinion the defendant was legally insane at the time of the shooting, did not know the nature or quality of her act, and did not realize she was doing wrong. A psychologist testified that as a result of certain tests administered to the defendant, it was his conclusion that she was not malingering.

The Commonwealth offered no medical testimony in refutation of that submitted by the defense. Counsel for the appellant, stressing the above fact and noting that post trial, the court had found on the basis of a report submitted by a psychiatrist that the defendant was mentally ill and required hospitalization,[1] strenuously argues that the totality of the evidence

---

[1] The crime occurred on October 11, 1960. The verdict of the jury rendered on June 21, 1961. The court on July 1, 1961, as the result of a report submitted by a psychiatrist directed that the defendant be transferred to the Wernersville State Hospital. On January 30, 1962, and again on June 5, 1962, the doctor superintendent of the hospital advised the court in writing that the defendant had so sufficiently recovered from her illness that hospital care was no longer required. On June 11, 1962, she was ordered returned to the county prison.

manifests that the verdict of the jury was arbitrary and contrary to the weight of the testimony, requiring the grant of a new trial.

In resolving the merit of this contention, we must necessarily review the entire record and not confine our attention to the testimony that is favorable to the defendant: *Commonwealth v. Melton*, 406 Pa. 343, 178 A. 2d 728 (1962). While the Commonwealth did not offer medical opinion testimony as to the defendant's mental condition at the relevant time, it did submit substantial evidence through multiple witnesses strongly indicating that before the shooting and immediately thereafter, the defendant was in control of her senses and fully conscious of her acts. Further, her own spontaneous statements immediately following the occurrence manifest an individual consciously remorseful of what she had done. Quite significantly, when questioned shortly after the shooting by an investigating police officer, she stated that the gun discharged accidentally while she and her husband were struggling for possession of it. When pressed for further details she declined to answer additional questions before talking to her lawyer. In view of the whole record, the issue of the defendant's mental competency at the time of the homicide was properly for the jury's determination.

Since the sanity of an individual is always presumed, one who asserts insanity in defense of the commission of a crime has the burden of proving its existence by a fair preponderance of the evidence. *Commonwealth v. Carluccetti*, 369 Pa. 190, 85 A. 2d 391 (1952). As stated in *Commonwealth v. Iacobino*, 319 Pa. 65, 178 A. 823 (1935), at 68, "The presumption of sanity, which is the normal condition of man, 'holds good, and is the full equivalent of express proof until it is successfully rebutted'": (Citing cases); and again, at 69, "Where mental capacity at the time of

the act is an issue, the Commonwealth is aided by the presumption of sanity, it is not required to prove affirmatively mental capacity to commit the act."

Aside from the presumption, the Commonwealth, as noted before, offered convincing proof as to the defendant's conduct and condition before and immediately after the occurrence, which justified the jury's conclusion that she was legally sane at the time. See, *Commonwealth v. Tyrrell*, 405 Pa. 210, 174 A. 2d 852 (1961). The fact that she needed post trial mental care does not rebut the presumption of sanity at the time of the criminal offense: *Com. ex rel. Hudson v. Burke*, 175 Pa. Superior Ct. 241, 103 A. 2d 279 (1954); allocatur denied, cert. denied, 348 U.S. 844 (1954). See also, *Com. ex rel. Leon v. Martin*, 184 Pa. Superior Ct. 236, 132 A. 2d 774 (1957).

Before the trial, upon request of her counsel, a sanity commission consisting of two physicians and a lawyer was appointed by the court to inquire into defendant's sanity under The Mental Health Act of June 12, 1951, P. L. 533, as amended, 50 P.S. §§1071-1622. Following a complete hearing held on February 8, 1961, the commission reported its conclusion that the defendant was not suffering from a mental illness, "which so lessens her capacity to use her customary self-control, judgment and discretion in the conduct of her affairs and social relations as to make it necessary or advisable for her to be under care."

At this hearing, the defendant personally testified and voluntarily detailed her personal relationship with her deceased husband. The hearing was public and the defendant was represented by counsel. She then stated, inter alia, that her husband was "a nice person" and treated her "all right" with respect to their personal sex relations. However, when the defendant testified at the trial in the case, some four months later, her statements in this regard were materially

different. She then testified that the decedent abused her sexually and demanded abnormal sexual relations which upset her emotionally. When cross-examined by Commonwealth's counsel as to the variance in her testimony, she denied any recollection of the answers given at the sanity commission hearing. In rebuttal, the Commonwealth called the chairman of the commission, who read, from the official stenographic notes of testimony before the commission, three questions asked the defendant and her answers thereto, which pointedly manifested these contradictory and inconsistent statements. He also described her appearance and demeanor at the commission's hearing. A timely objection to this testimony *on the ground of relevancy and materiality* was noted of record.

It is now argued that the admission of this testimony was prejudicial error. It is urged that a hearing under The Mental Health Act is a non-adversary proceeding, completely unconcerned with the guilt or innocence of the accused, and that testimony given therein is privileged and not admissible at trial. It is further urged that the admission of this testimony tended to bring before the jury the fact that such a hearing had already determined the sanity of the accused and served to confuse the issue then before the jury.

We shall discuss the last portion of this contention first.

In examining the chairman of the sanity commission at the trial, the Commonwealth scrupulously refrained from disclosing to the jury the nature or purpose of the hearing before the commission. On cross-examination, appellant's counsel elicited the information that the hearing was pursuant to The Mental Health Act, and had nothing to do with the guilt or innocence of the accused. Neither counsel referred to the conclusion or findings of the commission, nor was

such information given to the jury. The purpose of the testimony and its limited significance were clearly stated in the trial court's instructions. It is difficult to see, therefore, how the testimony involved could possibly have confused the pertinent issue at trial, in the jurors' minds.

Now as to the argument that the testimony was privileged, it must be noted immediately that no such objection was entered at trial. A specific objection on the basis of materiality and relevancy was stated. Where the ground upon which an objection is based is specifically stated, all other reasons for exclusion are waived: *Commonwealth v. Raymond,* 412 Pa. 194, 194 A. 2d 150 (1963). The testimony was clearly relevant and material for the limited purpose of affecting the defendant's credibility. Prior false or contradictory or conflicting statements by an accused are admissible for the purpose of impeaching credibility: *Commonwealth v. Gockley,* 411 Pa. 437, 192 A. 2d 693 (1963). The testimony was not admitted or submitted to the jury as evidence of the defendant's mental condition at the time of the homicide or at any other time. Again, the proper purpose for its admission was clearly stated to the jury in the court's instructions. Under the circumstances, this particular assignment of error is, therefore, devoid of merit. Where an evidentiary fact is admissible for one purpose, it is not inadmissible because it does not satisfy the rules applicable to some other capacity or even because the jury might consider it in the latter capacity: *Commonwealth v. Petrillo,* 341 Pa. 209, 19 A. 2d 288 (1941).

Finally, appellant complains of the court's refusal to permit a medical doctor to express his conclusion that the defendant was legally insane two days before the occurrence involved. This witness frankly admitted that he could not say whether or not she could distinguish between right or wrong. He was, there-

fore, incompetent to express the opinion solicited as to the defendant's legal sanity. See, *Commonwealth v. Woodhouse,* 401 Pa. 242, 164 A. 2d 98 (1960); *Commonwealth v. Tyrrell,* supra.

Judgment affirmed.