832 A.2d 1026

**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Steven McCRAE, Appellant.**

Supreme Court of Pennsylvania.

Submitted April 2, 2002.

Decided Sept. 29, 2003.

596

598

Wallace L. Walker, for Steven McCrae, Appellant.

Hugh J. Burns, Philadelphia, Amy Zapp, Harrisburg, for the Com. of PA, Appellee.

Before: CAPPY, C.J., and CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and LAMB, JJ.

## *OPINION*

JUSTICE CASTILLE.

On November 27, 2000, following a jury trial, appellant was convicted of two counts of first-degree murder,[1] one count of possession of an instrument of crime (PIC),[2] and one count of criminal conspiracy.[3] At the penalty phase, the jury found

1. 18 Pa.C.S. § 2502(a).
2. 18 Pa.C.S. § 907.
3. 18 Pa.C.S. § 903.

one aggravating circumstance and two mitigating circumstances.[4] The jury found that the aggravating circumstance outweighed the mitigating circumstances, and accordingly, imposed a sentence of death for each of appellant's first-degree murder convictions. The trial court formally imposed the death sentences and, in addition, imposed consecutive sentences of five to ten years' incarceration for appellant's PIC and criminal conspiracy convictions. Appellant filed a Motion in Arrest of Judgment and for a New Trial on December 7, 2000, which the trial court denied on March 30, 2001. This direct appeal followed. For the reasons set forth below, we affirm.

Although appellant does not specifically challenge the sufficiency of the evidence underlying his convictions for first-degree murder, we begin, as we do in all death penalty direct appeals, by independently reviewing the evidence to ensure that it is sufficient to support the first-degree murder convictions. *Commonwealth v. Zettlemoyer,* 500 Pa. 16, 454 A.2d 937, 942 n. 3 (1982), *cert. denied,* 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983), *reh. denied,* 463 U.S. 1236, 104 S.Ct. 31, 77 L.Ed.2d 1452 (1983). When reviewing the sufficiency of the evidence, this Court must determine whether the evidence at trial, and all reasonable inferences deducible therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish all elements of the offense beyond a reasonable doubt. *Commonwealth v. Bridges,* 563 Pa. 1, 757 A.2d 859, 864 (2000). A person is guilty of first-degree murder where the Commonwealth proves that (1) a human being was unlawfully killed; (2) the person accused is responsible for the killing; and (3) the accused acted with specific intent to kill. 18 Pa.C.S. § 2502(d); *Commonwealth v. Spotz,* 563 Pa. 269, 759 A.2d 1280, 1283 (2000). An intentional killing is a "[k]illing by means of poison, or by lying in wait, or any other kind of

4. The aggravating circumstance found by the jury was that appellant was convicted of another murder committed either before or at the time of the offense at issue. 42 Pa.C.S. § 9711(d)(11). The two mitigating circumstances were that appellant had no significant history of criminal convictions, *id.* § 9711(e)(1), and appellant's age, *id.* § 9711(e)(4).

willful, deliberate and premeditated killing." 18 Pa.C.S. § 2502(d). Specific intent to kill can be inferred from the use of a deadly weapon upon a vital part of the victim's body. *Commonwealth v. Fletcher*, 561 Pa. 266, 750 A.2d 261, 267 (2000).

The evidence adduced at trial established that at approximately 10:30 p.m. on August 13, 1998, Kendrick Haskell and John Ford parked their car across the street from a group of people sitting on the steps of a Chinese food restaurant located at the corner of Germantown Avenue and Tioga Street in Philadelphia. The group of people included appellant and his co-defendant, Richard Mitchell, as well as Braheem (also known as Brahma) Jackson, Donta Dawson, Kattery Franklin, and a woman identified only as Michelle. After parking, Haskell exited the car and walked toward the restaurant while Ford remained in the car. As Haskell walked toward the restaurant, he bumped into appellant's aunt, Kattery Franklin. Haskell then entered the restaurant and placed his order. After Haskell exited the restaurant, appellant's group of friends exchanged words with Haskell. An argument ensued and, ultimately, a physical altercation broke out between Haskell and appellant. A few minutes into the altercation, Dawson stepped in and began fighting with Haskell as well. Then, while Dawson and Haskell fought, appellant stepped back and asked Mitchell for Mitchell's gun, a .32 caliber revolver. Mitchell handed appellant his gun, whereupon appellant shot Haskell twice in the chest and once in the head. Appellant then turned around and shot Ford once in the head as he stood by the passenger side of the parked car. Both Haskell and Ford died as a result of their gunshot wounds.

Multiple witnesses testified at appellant's trial that they saw appellant, or someone resembling appellant, commit the murders. Harold James, who recognized appellant from the neighborhood, positively identified appellant as the shooter of both men. N.T. 11/16/00, at 217–230; 11/17/00, at 10–67. Two other eyewitnesses, Father Angelo Hernandez and Celeste Cline, could not positively identify appellant as the shooter, but did state that they saw an African American male wearing

a white T-shirt, blue or black shorts, and a baseball cap,[5] shoot one victim in front of the Chinese food restaurant and then turn and shoot a second victim as he stood next to a car. N.T. 11/16/00, at 141–189, 190–213. In addition, Veronica Jenkins, another witness who knew appellant from the neighborhood, testified that she heard gunshots and saw appellant soon thereafter as he walked down the street carrying a handgun and muttering to himself "fuck that shit, fuck that cat, he don't know who the fuck he was fucking with." N.T. 11/17/00, at 89–118. Jenkins also described appellant as wearing a white T-shirt, blue jean shorts, and a baseball cap. *Id.* at 100–101.

Appellant, for his part, admitted at trial that he shot Haskell, but denied killing Ford. N.T. 11/20/00, at 194–199. Appellant testified that he and Haskell "got into a fight" after Haskell insulted appellant and appellant's aunt. *Id.* at 192. Appellant claimed that Braheem Jackson, not co-defendant Mitchell, passed a gun to him as they fought. *Id.* at 196. He further testified that the confrontation culminated less than a minute later when appellant fired three shots at Haskell. *Id.* at 197. Then, according to appellant, he passed the gun back to Jackson and walked away from the scene. *Id.* at 198–201.

■ This evidence, and all reasonable inferences deductible therefrom, when viewed in the light most favorable to the Commonwealth as verdict winner, overwhelmingly supports appellant's first-degree murder convictions. The victims, Haskell and Ford, were unlawfully killed, as there is nothing on this record to support that the use of deadly force against them was legally justified. The eyewitness testimony, and appellant's own partial admission, identified appellant as the shooter and supports the conclusion that appellant was the person who deliberately shot both men. The evidence that appellant, while in the midst of a fistfight with Haskell, asked Mitchell for his gun establishes that the killings were deliberate. Finally, the fact that appellant shot the victims in vital parts of their bodies warranted the jury finding of a specific

5. Appellant, who is African–American, testified that he was wearing a white T-shirt, dark blue jeans, and a baseball cap on the evening of the shootings. N.T. 11/20/00, at 201.

intent to kill. Having found that the evidence is sufficient to support appellant's two first-degree murder convictions, we now proceed to address appellant's specific allegations of error.

Appellant was tried jointly with co-defendant Richard Mitchell. Both of appellant's claims of error relate to the trial court's admission of the testimony of eyewitness Braheem Jackson at the preliminary hearing of co-defendant Mitchell. At Mitchell's preliminary hearing on October 1, 1998, Jackson testified, among other things, that he saw Mitchell hand appellant the gun which appellant then used to shoot Haskell and Ford. Appellant, who was not arrested until January 12, 1999, was not present at Mitchell's preliminary hearing. Appellant's preliminary hearing was held on February 9, 1999, and Jackson did not testify at this hearing.

On the second day of jury selection, the Commonwealth apprised the trial court that Jackson had become unavailable and sought to introduce his prior testimony at Mitchell's preliminary hearing into evidence against Mitchell. Upon hearing testimony regarding the circumstances of Jackson's prior testimony and his absence from trial, the trial court determined that Jackson was unavailable and that Mitchell had had a full and fair opportunity to cross-examine Jackson at his preliminary hearing. Accordingly, the trial court ruled that Jackson's preliminary hearing testimony was admissible against Mitchell pursuant to the former testimony exception to the hearsay rule. The trial court further ordered that the testimony be redacted to eliminate any specific reference to appellant and noted that it would instruct the jury that the testimony was to be considered as evidence against Mitchell only. The Commonwealth thereafter redacted Jackson's testimony omitting certain irrelevant portions of it and, in addition, replacing all specific references to appellant by name with the neutral term, "this guy."

The next day, appellant objected to the Commonwealth's proposed redaction of Jackson's prior testimony. The trial court conducted a line-by-line examination of the testimony out of the presence of the jury, admitting some portions, and

excluding others. All references to appellant were replaced with the phrase, "this guy." As the trial court conducted this examination, appellant raised several general objections to specific portions of the redacted testimony. When the trial court concluded its review of Jackson's testimony, appellant raised no further objections, but Mitchell objected to the redaction on the basis that "cautionary instructions [were not] sufficient to protect the interests of [appellant]." N.T. 11/17/00, at 232. The trial court then ordered the jury to return. Before Jackson's testimony was admitted into evidence against Mitchell, the trial court instructed the jury on its relevance and limited admissibility. The court first explained the former testimony exception to the hearsay rule, and then continued:

In this case I have made a determination that Brahma Jackson, a Commonwealth witness is not available to testify at this hearing, this trial. As a result, I am going to permit the prior recorded testimony of Brahma Jackson that was given at a preliminary hearing of the defendant Richard Mitchell on October 1, 1998 to be admitted into evidence for your consideration.

Now, this prior recorded testimony will be admitted at trial as evidence in the case of Commonwealth versus Richard Mitchell only and is to be considered by you solely as evidence being offered in the case of Commonwealth versus Richard Mitchell.

This prior recorded testimony is not admissible in the case of Commonwealth versus Steven McCrae and is not under any circumstances to be considered as evidence in his case by this jury during your deliberations.

This is because the defendant Steven McCrae was not present during the hearing that took place on October 1, 1998 when the witness Brahma Jackson testified, and as such, the defendant Steven McCrae did not have the opportunity to cross-examine Brahma Jackson concerning his testimony.

So to repeat, the prior recorded testimony of Brahma Jackson is admissible as evidence in the case of Common-

wealth versus Richard Mitchell only. It is not to be considered by this jury in the case of Commonwealth versus Steven McCrae.

*Id.* at 236–239.[6] The prosecutor who had represented the Commonwealth at Mitchell's preliminary hearing then read Jackson's testimony, as redacted by the trial court, into the record. *Id.* at 236–279. Without further objection to the admission of the testimony or to the trial judge's cautionary charges, the court adjourned for the day. The next day of trial, appellant moved for a mistrial "based on the admission of the redacted notes of testimony." N.T. 11/20/00, at 2. The motion was denied. *Id.*

Appellant first claims that Jackson's preliminary hearing testimony was so unreliable that its admission violated the hearsay rule and his right of confrontation under the Pennsyl-

---

**6.** The trial court included a similar comprehensive instruction in its final charge to the jury, stating no less than four times that Jackson's preliminary hearing testimony was not evidence against appellant:

Now, in this case, members of the jury, the Commonwealth introduced the preliminary hearing testimony of the witness Braheem Jackson . . .

\* \* \*

This prior recorded testimony is admissible only in the case of the defendant who was present at that prior hearing. In this case it was Mr. Mitchell who was present represented by an attorney and who had the opportunity to cross-examine the witness when he testified.

\* \* \*

The prior recorded testimony of Mr. Jackson was admitted as evidence in the case of Commonwealth versus Richard Mitchell only and is to be considered by you solely as evidence being offered in the case of Commonwealth versus Richard Mitchell.

The prior recorded testimony is not at all admissible in the case of Commonwealth versus Steven McCrae and is not to be considered as evidence in his case by you in your deliberations. This is because Mr. McCrae was not present during the hearing that took place on October 1, 1998 wherein the witness Braheem Jackson testified and as such, Mr. McCrae did not have any opportunity to cross-examine this witness concerning his testimony.

To repeat the prior recorded testimony of Braheem Jackson is admissible as evidence only in the case of Commonwealth versus Richard Mitchell. It is to be considered by you only in deciding the case of Commonwealth versus Richard Mitchell. It is not to be considered by you in deciding the case of Commonwealth versus Steven McCrae.

N.T. 11/21/00, at 211–214.

vania and United States Constitutions. Appellant maintains that there were a number of inconsistencies between Jackson's preliminary hearing testimony and an earlier statement that Jackson had given to the police regarding the shootings. For example, appellant contends that Jackson initially told the police that appellant shot both victims, but then testified at Mitchell's preliminary hearing that he did not see who fired the shots that killed the second victim. In addition, appellant asserts that Jackson told police that appellant asked Mitchell for the gun and Mitchell gave him the weapon, whereas he testified at the preliminary hearing that he only told the police that Mitchell gave appellant the gun because the police told him to say this. Appellant also contends that Jackson initially told the police that Mitchell told him that he had thrown the gun away, but he testified at the preliminary hearing that he did not know what happened to the gun after the shootings. Appellant alleges that the multiple discrepancies between Jackson's preliminary hearing testimony and his earlier statement to police render the admitted testimony inherently unreliable and thus inadmissible under the hearsay rule and the confrontation clause.

 This claim first fails for the fundamental reason that Jackson's preliminary hearing testimony was not admitted against appellant. As we have described, Jackson's preliminary hearing testimony was introduced solely against Mitchell. All specific references to appellant in the testimony were replaced with the neutral phrase, "this guy." In addition, the trial court twice issued comprehensive instructions to the jury that Jackson's testimony was to be considered in deciding the Commonwealth's prosecution of Mitchell only, and not as evidence against appellant. It is an "almost invariable assumption of the law that jurors follow their instructions." *Richardson v. Marsh*, 481 U.S. 200, 206, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987). *See also Commonwealth v. Bridges*, 563 Pa. 1, 757 A.2d 859, 883 (2000) ("[A] jury is presumed to have followed the instructions of the trial court.").

Pennsylvania has long permitted the limited admission of evidence only as to one party or for one purpose. *See* Pa.R.E.

105 ("When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court upon request shall, or on its own initiative may, restrict the evidence to its proper scope and instruct the jury accordingly."); *Commonwealth v. Updegrove*, 413 Pa. 599, 198 A.2d 534, 537 (1964) (evidence that "is admissible for one purpose ... is not inadmissible because it does not satisfy the rules applicable to some other capacity or even because the jury might consider it in the latter capacity") (citation omitted); *Commonwealth v. Wright*, 227 Pa.Super. 134, 323 A.2d 349, 351–52 (1974) ("Evidence which is admissible for one purpose does not become inadmissible merely because it would be inadmissible if offered for another purpose.") (citation omitted). In fact, it is "common" in joint trials that "evidence is admissible against one co-defendant but inadmissible against another." *Commonwealth v. Travers*, 564 Pa. 362, 768 A.2d 845, 847 (2001). *See also Commonwealth v. Patterson*, 519 Pa. 190, 546 A.2d 596, 601 (1988) (possible prejudicial effect of introduction of evidence against only one of two defendants in joint trial was no "more harmful than the prejudicial effect ... habitually tolerate[d] in joint trials where evidence is introduced against only one of the defendants"). A party generally cannot vicariously litigate the claims of another party. Because Jackson's testimony was introduced against Mitchell only, appellant's complaints fail.

■ Moreover, even if it is assumed that appellant may vicariously litigate an evidentiary claim belonging to Mitchell because of the prospect of spillover prejudice, appellant has not shown that the evidence was improperly admitted against Mitchell. The admissibility of evidence is a matter addressed to the discretion of the trial court and the trial court's ruling may be reversed only upon a showing that the court abused its discretion. *Commonwealth v. Richter*, 551 Pa. 507, 711 A.2d 464, 466 (1998). Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Pa.R.E. 801(c). Hearsay evidence is not admissible except as provided by the Pennsylvania Rules of Evidence, this Court,

or by statute. Pa.R.E. 802. The former testimony exception to the hearsay rule provides that the testimony of a witness at another hearing of the same or a different proceeding may be introduced into evidence if the witness is unavailable and the party against whom the evidence is to be introduced had an adequate opportunity and similar motive to develop the testimony by direct, cross, or a redirect examination. Pa.R.E. 804(b)(1). *See also* 42 Pa.C.S. § 5917 ("Whenever any person has been examined as a witness, either for the Commonwealth or for the defense, in any criminal proceeding conducted in or before a court of record, and the defendant has been present and has had an opportunity to examine or cross-examine, if such witness afterwards dies, or is out of the jurisdiction so that he cannot be effectively served with a subpoena, or if he cannot be found, or if he becomes incompetent to testify for any legally sufficient reason properly proven, notes of his examination shall be competent evidence upon a subsequent trial of the same criminal issue."). Here, the trial court found that Jackson was unavailable and appellant does not dispute that finding.

■ Under both the Pennsylvania and United States Constitutions, a criminal defendant has a right to confront and cross-examine the witnesses against him. *Commonwealth v. Bazemore*, 531 Pa. 582, 614 A.2d 684, 685 (1992) (*citing Commonwealth v. McGrogan*, 523 Pa. 614, 568 A.2d 924, 927 (1990)). It is well-established, however, that the introduction of an unavailable witness's prior recorded testimony from a preliminary hearing is admissible at trial and will not offend the right of confrontation, provided the defendant had counsel and a full opportunity to cross-examine that witness at the hearing. *Commonwealth v. Paddy*, 569 Pa. 47, 800 A.2d 294, 312–13 (2002); *Commonwealth v. Chmiel*, 558 Pa. 478, 738 A.2d 406, 417–18 (1999), *cert. denied*, 528 U.S. 1131, 120 S.Ct. 970, 145 L.Ed.2d 841 (2000); *Commonwealth v. Rizzo*, 556 Pa. 10, 726 A.2d 378, 380 n. 2 (1999); *Bazemore*, 614 A.2d at 687; *Commonwealth v. Chestnut*, 511 Pa. 169, 512 A.2d 603, 605 (1986); *Commonwealth v. Duncan*, 473 Pa. 62, 373 A.2d 1051, 1054 (1977); *Commonwealth v. Johnson*, 758 A.2d 166, 169

(Pa.Super.2000). The trial court found that Mitchell had an adequate opportunity to cross-examine Jackson at his preliminary hearing.

▮▮▮ Appellant has not shown that Jackson's preliminary hearing testimony was improperly admitted against Mitchell. Appellant's complaint that this evidence lacked sufficient indicia of reliability misses the mark. For purposes of the hearsay rule, inquiry into the reliability of the statement is not necessary where, as here, the statement in question falls squarely within a well-established hearsay exception. Because statements within established hearsay exceptions possess the imprimatur of "longstanding judicial and legislative experience," their reliability is presumed. *Idaho v. Wright,* 497 U.S. 805, 817, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990). Similarly, although a statement admissible under an exception to the hearsay rule may nonetheless be inadmissible under the state and federal confrontation clauses if it does not bear "adequate indicia of reliability[,] . . . reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception." *Id.* at 815, 110 S.Ct. 3139. Alleged prior inconsistencies—such as appellant identifies—are classic points affecting evidentiary weight and not admissibility. The weight to be accorded the testimony, of course, is for the jury.

Appellant next argues that a series of comments by the prosecutor, which went uncorrected by the trial court, effectively undid the redaction made to Jackson's preliminary hearing testimony and thereby violated his confrontation rights under *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), and its progeny. Specifically, appellant claims that on ten separate occasions during the prosecutor's opening and closing arguments, he "pierced the veil created by the redactions and told the jury that [appellant] was, in fact, 'this guy' " referred to in Jackson's redacted testimony. Brief of Appellant at 30–31. For example, appellant cites a portion of the opening argument in which the prosecutor stated that appellant armed himself with a gun that was given to him by Richard Mitchell:

Steven McCrae turned to Richard Mitchell and said, "give me your gun." . . . Mitchell immediately gave it to him and . . . Steven McCrae armed himself with a gun that was given him by Richard Mitchell. McCrae then shot Kendrick Haskell in the chest.

N.T. 11/16/00, at 91. Appellant identifies other statements in the prosecutor's closing argument, including remarks in which the prosecutor first characterized and then commented upon the credibility of appellant's testimony, testimony which identified the absent Jackson and not co-defendant Mitchell as the man who provided the gun:

The guy who was a member of our group, our friend, our gang, who hung on our corner, who grew up with us, who saw us every day, who known [sic] us for the last ten years, who should have known better than to give the police that statement and give us up . . .

\* \* \*

But it was payback time for Braheem Jackson and the best way to pay him back would be to come in there on the day they arrest you and say I shot the first guy but I have an explanation for that and . . . well, first of all, it was Braheem that handed me the gun . . .

\* \* \*

. . . after I shot the first guy I gave [the gun] to Braheem so I guess Braheem must have turned around and shot John Ford.

N.T. 11/21/00, at 124–26.

The remaining contested statements occurred during a part of the prosecutor's closing argument in which he made clear that he was specifically addressing the evidence against co-defendant Mitchell, and not appellant. *Id.* at 152–190. The prosecutor began by stating, "Let me talk about Richard Mitchell now. . . ." *Id.* at 152. The Commonwealth's case against co-defendant Mitchell was premised upon his supplying the murder weapon. Part of Mitchell's defense was appellant's own trial testimony that it was Jackson, not Mitchell, who provided the murder weapon. In arguing the case

against Mitchell to the jury, the prosecutor, of course, advert-
ed to Jackson's preliminary hearing testimony. Appellant
nevertheless complains that that argument undid the redac-
tion of the testimony to the extent the prosecutor argued that
Mitchell gave the gun to appellant, rather than saying Mitchell
gave it to the other guy. Appellant argues, in essence, that
references to Mitchell as providing the gun to *him* specifically
were improper and violated *Bruton.* No relief is due.

Appellant failed to raise and preserve this claim in the trial
court. Appellant lodged no objection whatsoever to the prose-
cutor's opening argument. Following the prosecutor's closing
argument, appellant objected that the prosecutor mistakenly
stated during his summation that the jury had heard a 911
emergency telephone call made by an eyewitness to the mur-
der. In addition, appellant objected to the prosecutor reading
Jackson's redacted testimony during his closing argument.
*See id.* at 194–96.[7] Appellant never alleged in the trial court,
as he does now, that the prosecutor's statements in his open-
ing and closing arguments effectively undid the redaction of
Jackson's testimony in contravention of the *Bruton* rule.

 Because appellant failed to raise his *Bruton* claim
in the trial court, the issue would ordinarily be deemed waived
on appeal. *See* Pa.R.A.P. 302(a) ("Issues not raised in the
lower court are waived and cannot be raised for the first time
on appeal."). Nevertheless, under the relaxed waiver rule
applicable to direct capital appeals, we will address the merits.
*Commonwealth v. Miller,* 541 Pa. 531, 664 A.2d 1310, 1322
(1995).[8]

---

**7.** The prosecutor responded that he had read Jackson's statements as
they were redacted by the trial court. The prosecutor added that he
read them in the context of his discussion of the evidence against
Mitchell and made clear that they were to be considered as evidence
only against Mitchell. The trial court ruled that it would repeat the
instruction directing the jury to consider Jackson's prior testimony only
against appellant's co-defendant Mitchell, not appellant, in its final
charge to the jury. Appellant lodged no further objection, nor did he
contend that he was entitled to greater relief than the trial court gave
him. *See id.* at 196–97.

**8.** This Court abrogated the relaxed waiver rule in *Commonwealth v.
Freeman,* 827 A.2d 385 (Pa.2003). We adopted a new general rule

██ As we have noted above, it is common in joint trials of multiple defendants that evidence is admitted solely against one defendant. *Travers*, 768 A.2d at 847. The general rule in such a circumstance is that an instruction to the jury that it is to consider the evidence only with respect to the defendant against whom it has been properly introduced is sufficient to remove any potential spillover prejudice to the defendant against whom the evidence was not admitted. *Id. See also Commonwealth v. Bridges*, 563 Pa. 1, 757 A.2d 859, 883 (2000) ("[A] jury is presumed to have followed the instructions of the trial court.") (citation omitted); *Commonwealth v. Travaglia*, 541 Pa. 108, 661 A.2d 352, 361 (1995) ("The presumption in our law is that the jury follows instructions.").

"In *Bruton*, however, the [United States] Supreme Court recognized a narrow exception to the general rule that cautionary instructions are sufficient to eradicate any potential prejudice in joint trials." *Travers*, 768 A.2d at 847. In *Bruton*, the trial court had admitted into evidence at a joint trial the confession of Bruton's non-testifying co-defendant, which actually named and incriminated Bruton in the crime on trial. The trial court instructed the jury that the confession "if used, can only be used against [Bruton's co-defendant]," and could not be considered as evidence against Bruton. *Bruton*, 391 U.S. at 126 n. 2, 88 S.Ct. 1620. The Supreme Court acknowledged that, as a general matter, the presumption in the law is that the jury will follow the court's instruction. The Court reasoned, however, that, in some contexts, "the risk that the jury will not, or cannot, follow the judge's instructions is so great, and the consequences of such a failure so substantial for the defendant, that the practical and human limitations on the jury system cannot be ignored." *Id.* The Court continued that:

providing that claims that were not properly preserved and raised in the trial court are waived and unreviewable in capital direct appeals. *Id.* at 402. This new rule, however, applies prospectively only. *Id.* The relaxed waiver doctrine continues to apply to direct appeals such as the instant one in which the appellant's brief was filed prior to, or was due to be filed within the 30 days of, this Court's decision in *Freeman*. *Id.* at 403.

Such a context is presented here, where the powerfully incriminating extrajudicial statements of a codefendant who stands accused side-by-side with the defendant, are deliberately spread before the jury in a joint trial. Not only are the incriminations devastating to the defendant but their credibility is inevitably suspect, a fact recognized when accomplices do take the stand and the jury is instructed to weigh their testimony carefully given the recognized motivation to shift blame onto others. The unreliability of such evidence is intolerably compounded when the alleged accomplice, as here, does not testify and cannot be tested by cross-examination. It was against such threats to a fair trial that the Confrontation Clause was directed.

*Id.* at 135–36, 88 S.Ct. 1620. Accordingly, the Court held that the admission of the powerfully incriminating statement by the non-testifying co-defendant violated Bruton's right of confrontation under the Sixth Amendment of the United States Constitution, notwithstanding the jury charge.

Following *Bruton*, the Supreme Court approved redaction and a limiting instruction as a means of eliminating possible prejudice arising from the admission of a co-defendant's confession at a joint trial in *Richardson v. Marsh*, 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987) (no *Bruton* violation where co-defendant's confession was redacted to remove all reference to defendant and jury was instructed to consider confession as evidence against co-defendant only). *See also Gray v. Maryland*, 523 U.S. 185, 192, 118 S.Ct. 1151, 140 L.Ed.2d 294 (1998) ("Unless the prosecutor wishes to hold separate trials or to use separate juries or to abandon use of the confession, he must redact the confession to reduce significantly or to eliminate the special prejudice that the *Bruton* Court found."). This Court has also endorsed the practice. *See Commonwealth v. Johnson*, 474 Pa. 410, 378 A.2d 859, 860 (1977) ("The basic theory of redaction seems sound. If a confession can be edited so that it retains its narrative integrity and yet in no way refers to defendant, then use of it does not violate the principles of *Bruton*.").

■ *Bruton* applies, however, only in the context that gave rise to the decision, *i.e.*, the introduction of a powerfully incriminating statement made by a non-testifying co-defendant at a joint trial. *See Richardson*, 481 U.S. at 207, 107 S.Ct. 1702 (*Bruton* applies to statements that expressly implicate defendant and are therefore powerfully incriminating); *Commonwealth v. Gribble*, 550 Pa. 62, 703 A.2d 426, 437 (1997) ("When the non-testifying co-defendant's statement does not inculpate the other defendant, there is no violation of the right of confrontation."). *Bruton* is inapplicable to statements made by an individual other than a non-testifying co-defendant at a joint trial of co-defendants. *See Commonwealth v. Robins*, 571 Pa. 248, 812 A.2d 514, 521 (2002) (opinion announcing judgment of court); *United States v. Artis*, 917 F.Supp. 347, 349 (E.D.Pa.1996) (*Bruton* does not apply to incriminating statement by co-defendant's wife because she was not defendant at joint trial).

■ Here, appellant asserts that the trial court erred because the prosecutor's comments during his opening and closing statements undid the redaction of Jackson's preliminary hearing testimony in violation of *Bruton*. Appellant's claim, however, pivots on the faulty presumption that the *Bruton* rule applies to Jackson's testimony. It does not. The statement here was not made by co-defendant Mitchell. Moreover, Jackson was never charged in relation to the criminal incident, let alone tried jointly with appellant. It is the particularly "devastating" prejudicial effect and inherent "unreliability" of a directly incriminating statement made by a **non-testifying co-defendant** that powered *Bruton's* exception to the general rule that cautionary charges are enough to avoid spillover prejudice in joint trials. 391 U.S. at 136, 88 S.Ct. 1620. These concerns are simply not present in the instant context involving the statement of a non-party eyewitness to the crime.

Because *Bruton* is inapplicable to Jackson's statement, there was no requirement, at least under *Bruton*, to redact it. This was one of the "many circumstances" in which an instruction to the jury to consider this evidence only against the

defendant against whom it was offered presumably would have been adequate to safeguard against the potential of spillover prejudice. *Bruton,* 391 U.S. at 135, 88 S.Ct. 1620. We note that we are not suggesting that the trial court erred in redacting the statement. To the contrary, the court here acted cautiously in taking *Bruton*-like measures to further ensure the absence of spillover prejudice in a joint trial. But the point is that, in response to the belated Bruton claim raised by appellant, there was no *Bruton*-based trial court error in allegedly permitting the prosecutor to undo the redaction in his opening and closing arguments.

Although *Bruton* is inapplicable, we note that a defendant's right of confrontation may nonetheless be implicated where the prior testimony of an unavailable witness is introduced against a co-defendant at a joint trial, if the defendant did not have the opportunity to cross-examine that witness. *See generally 5 WIGMORE ON EVIDENCE* § 1398 (Chadbourn rev. 1974 & Supp. 2002). For example, in *Commonwealth v. LaRosa,* 533 Pa. 479, 626 A.2d 103 (1993), this Court determined that, under the circumstances of that case, the judge's instructions were insufficient to protect the defendant's confrontation rights where the prosecution introduced against a co-defendant the preliminary hearing testimony of an unavailable witness. *Id.* at 108. Because the unavailable witness's prior testimony was actually exculpatory of the co-defendant and extremely inculpatory of the defendant, this Court concluded that, in light of the other evidence, the only logical explanation for the jury's verdict convicting the defendant of third degree murder and the co-defendant of only voluntary manslaughter was that the jury disregarded the court's limiting instruction regarding the prior testimony. *Id.* The *LaRosa* Court noted that the trial court had failed to repeat its limiting instruction when the jury asked to have the prior testimony read back to it during deliberations, thus increasing the risk that the jury improperly considered the prior testimony.

■ Here, by contrast, a disregard of the court's repeated instructions is not the only logical explanation for the jury's verdict. Although Braheem Jackson's prior testimony provided crucial evidence linking **Mitchell** to the crime, it was insignificant to the case against appellant. In fact, except for the question of who passed the murder weapon to appellant, Jackson's testimony was entirely consistent with appellant's own testimony that he shot Haskell, but did not shoot Ford. Moreover, unlike *LaRosa*, the trial court here redacted Jackson's prior testimony so that any references to appellant were replaced with the neutral term, "this guy," and the judge twice thoroughly instructed the jury that the testimony was admissible against Mitchell only. In any event, we do not read *LaRosa* as inconsistent with the usual presumption that a jury will follow a judge's limiting instructions. Thus, we are satisfied that the judge's limiting instructions in the case *sub judice* were sufficient to protect appellant's confrontation rights, notwithstanding the allegedly prejudicial but unobjected to comments of the prosecutor.[9]

■ In addition, we find any error in the prosecutor's comments to be harmless. *See Commonwealth v. Stallworth*, 566 Pa. 349, 781 A.2d 110, 120 (2001); *Commonwealth v. Samuels*, 566 Pa. 109, 778 A.2d 638, 641 (2001). The prosecutor's references to Jackson's prior testimony were *de minimus*, since overwhelming independent evidence existed to prove that appellant shot Haskell first and then Ford. As detailed above, multiple witnesses to the crime testified that they saw appellant, or someone who looked like appellant, shoot two people. Appellant himself admitted that he shot Haskell three times. Except as to the identity of the person who gave the murder weapon to appellant—an issue primarily in the case against Mitchell—Jackson's prior testimony was

9. Viewed in context, it is not entirely clear that the prosecutor's comments were improper. Again, appellant admitted that a gun was passed to him and that he shot Haskell. To the extent that the prosecutor's argument identified appellant as the person to whom the gun was passed, it was based upon evidence independent of Jackson's redacted testimony. The prosecutor relied upon Jackson's testimony primarily for the proper purpose of identifying Mitchell, rather than Jackson, as the man who provided the gun.

consistent with appellant's own testimony at trial, *i.e.*, both men testified that appellant and his friends exchanged words with Haskell, after which appellant shot him. Although the identity of the person who gave the murder weapon to appellant was critical to the Commonwealth's case against Mitchell, it was relatively insignificant to the case against appellant. The trial court's jury instructions concerning the proper limited use of Jackson's prior testimony, *see* N.T. 11/21/00, at 212–214, then further rendered any error harmless. *See Commonwealth v. Story*, 476 Pa. 391, 383 A.2d 155, 165 n. 18 (1978).

 Finally, this Court must conduct a statutory review of the death sentences. Pursuant to 42 Pa.C.S. § 9711(h)(3), this Court must affirm the sentences of death unless we determine that:

(i) the sentence of death was the product of passion, prejudice, or any other arbitrary factor; or (ii) the evidence fails to support the findings of at least one aggravating circumstance specified in subsection (d).

*Id.* After careful review of the record below, we conclude that the sentence imposed was not the product of passion, prejudice or any other arbitrary factor. We also conclude that the evidence was sufficient to establish the aggravating circumstance found by the jury: that appellant was convicted of another murder committed either before or at the time of the offense at issue. Since the jury found that that aggravating factor outweighed the two mitigating factors, it was statutorily required to impose the sentences of death. 42 Pa.C.S. § 9711(c)(1)(iv). We see no record-based reason to negate that determination.

Accordingly, we affirm the verdict and sentences of death imposed upon appellant by the Court of Common Pleas of Philadelphia County.[10]

Justice SAYLOR files a concurring opinion in which Chief Justice CAPPY and Justice NIGRO join.

10. The Prothonotary of this Court is directed to transmit to the Governor's office a full and complete record of the trial, sentencing hearing,

JUSTICE SAYLOR CONCURRING.

Respectfully, I take issue with the majority's assertion that it is not clear that challenged commentary by the district attorney during his closing speech concerning the preliminary hearing testimony of Braheem Jackson was improper. *See* Majority Opinion at 1039 n. 9. Certainly a prosecutor is not always bound to ignore contextual implications of an out-of-court statement arising in light of other trial evidence, *see generally Richardson v. Marsh*, 481 U.S. 200, 208, 107 S.Ct. 1702, 1708, 95 L.Ed.2d 176 (1987), and therefore, in this case for example, to disavow that the evidence demonstrated that Appellant was the person to whom Jackson was referring in accusatory references couched (before the jury) in terms of "this guy." A prosecutor may not, however, after a trial court has assiduously redacted accusatory references, directly attribute the accusation to the redacted witness statement. Yet this is precisely what occurred here, when the district attorney, in various permutations during his closing argument, indicated that "Braheem Jackson said, Richard Mitchell had a gun, he gave it to McCrae." N.T., Nov. 21, 2000, at 177; *see also id.* at 125, 156, 163–64. Whether this breach was intentional or not, it violated both the letter and the spirit of the trial court's directive and therefore should be recognized as improper. This is particularly the case where admission of Jackson's preliminary hearing testimony containing the statements was secured, *inter alia,* on the district attorney's representation to the trial court that "I submit to the Court that the redactions that I have . . . undertaken in this case are sufficient to protect the defendant[, i.e., Appellant]." N.T., Nov. 17, 2000, at 180.

While the above reference to Jackson's testimony occurred during summation of the Commonwealth's case against Appellant's co-defendant, it should be noted that the district attorney also disregarded the trial court's instructions to the effect that Jackson's testimony was not to be used against Appellant in his summation of the Commonwealth's evidence against

imposition of sentence and review by the Supreme Court in accordance with 42 Pa.C.S.A. § 9711(i).

Appellant. Specifically, this occurred in the district attorney's rebuttal of Appellant's claim to a lesser degree of culpability than first degree murder. In this regard, the district attorney stated that Appellant should be judged by his actions, including that, immediately prior to the killings, he

> turned and asked for a gun, a lethal weapon, the one weapon in this country responsible for probably killing more people than any other, a weapon which he even himself admitted he knows is capable, oh, yes, quite capable of killing.

> He asked for a loaded operable gun. . . .

N.T., Nov. 21, 2000, at 147. Since the only evidence of record suggesting that Appellant affirmatively asked for a firearm just before the killings derived from Jackson's preliminary hearing testimony, *see* N.T., Nov. 17, 2000, at 244–267, this line of argumentation had no place in the district attorney's closing vis-à-vis Appellant, in light of the trial court's repeated instructions.

On the broader legal points involved, while I agree with the majority that the United States Supreme Court's specific holding in *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), is not controlling here, I would not apply as categorical an approach to the Sixth Amendment principles underlying *Bruton* as the majority seems to apply. In particular, I would not exclude the possibility that such principles might render cautionary instructions insufficient to prevent the possibility of spillover prejudice in some larger set of circumstances analogous to, but not overlapping with, those before the United States Supreme Court in *Bruton.*

Concerning the disposition of this case, ultimately I agree with majority that the district attorney's transgressions of trial court directives do not entitle Appellant to a new trial, as the general incriminatory aspect of Jackson's preliminary hearing testimony was cumulative of the overwhelming evidence demonstrating Appellant's participation in the killings. It is a closer case, in my view, with respect to the district attorney's argument related to Jackson's reference to Appel-

lant's request for a gun immediately prior to the killings in terms of its potential effect on the jury's determination concerning the degree of Appellant's culpability. However, in light of the strength of the inference of Appellant's intent arising from the use to which overwhelming evidence demonstrated that he put the firearm, as well as the trial court's repeated instructions, I agree with the majority's ultimate finding of harmlessness.

Chief Justice CAPPY and Justice NIGRO join this concurring opinion.