J-S12014-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: I.B.B., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: F.R., FATHER | No. 1230 EDA 2015 |

Appeal from the Decree March 18, 2015
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0000660-2013
FID: 51-FN-2519-2012

| | |
|---|---|
| IN THE INTEREST OF: F.I.R., JR., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: F.R., FATHER | No. 1233 EDA 2015 |

Appeal from the Decree March 18, 2015
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0000659-2013
FID: 51-FN-2519-2012

| | |
|---|---|
| IN THE INTEREST OF: B.M.B., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: F.R., FATHER | No. 1234 EDA 2015 |

J-S12014-16

Appeal from the Decree March 18, 2015
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0000658-2013
FID: 51-FN-2519-2012

| | |
|---|---|
| IN THE INTEREST OF: C.D.B., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: F.R., FATHER | |
| | No. 1236 EDA 2015 |

Appeal from the Decree March 18, 2015
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0000656-2013
FID: 51-FN-2519-2012

| | |
|---|---|
| IN THE INTEREST OF: C.K.R., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: F.R., FATHER | |
| | No. 1237 EDA 2015 |

Appeal from the Decree March 18, 2015
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0000657-2013
FID: 51-FN-2519-2012

BEFORE:  MUNDY, J., OLSON, J., and STRASSBURGER, J.[*]

MEMORANDUM BY MUNDY, J.:                    **FILED April 21, 2016**

_____

[*] Retired Senior Judge assigned to the Superior Court.

- 2 -

Appellant, F.R. (Father) appeals from the March 18, 2015 decrees involuntarily terminating his parental rights to his five children, I.B.B., a female, born in November 1998; C.D.B., a female, born in June 2000; B.M.B., a female, born in September 2002; F.I.R., Jr., a male, born in February 2005; and C.K.R., a male, born in January 2007 (collectively the Children).[1]  After careful review, we affirm.[2]

On August 21, 2012, the Department of Human Services (DHS) became involved with this family due to a General Protective Services (GPS) report alleging that I.B.B. and C.D.B. disclosed that Father "used extreme methods of physical discipline on an ongoing basis."[3]  Trial Court Opinion, 9/22/15, at 1–2; N.T., 3/18/15, at DHS Exhibit 1.  Specifically, I.B.B. and C.D.B. disclosed that Father had hit them with belts and bats causing injury.  Trial Court Opinion, 9/22/15, at 2; N.T., 3/18/15, at DHS Exhibit 1 at 5.  The Children were immediately placed in the home of their maternal grandparents where they remained at the time of the subject proceedings.

---

[1] The Children's mother, C.R., died on May 29, 2012.  N.T., 3/18/15, at 12.

[2] During the underlying proceedings, the Child Advocate argued in favor of involuntarily terminating Father's parental rights.  N.T., 3/18/15, at 95.

[3] Additionally, A.B., a female, then age sixteen, who was natural Mother's child, but not Father's natural child, but who was living in his home, disclosed extreme physical discipline by Father against her.  N.T., 3/18/15, at DHS Exhibit 1.  A.B. is not a subject of these appeals, as she is not Father's child, but we note that she is mentioned throughout the certified record.

Trial Court Opinion, 9/22/15, at 2. In addition, the trial court issued an order that Father stay away from the Children until further order of court.[4] Stay Away Order, 9/17/12.

On September 26, 2012, the trial court adjudicated the Children dependent and permanency goals of reunification were established. DHS set forth Family Service Plan (FSP) goals, in part, for Father: to understand how and why the Children were injured; to learn non-physical forms of discipline; to prevent further abuse to the Children; to improve his relationship with the Children; to comply with court-ordered behavioral health evaluations; to participate in anger management counseling; to participate in parenting classes; to comply with the stay away order; and to comply with the court[-]ordered psychological evaluation. Trial Court Opinion, 9/22/15, at 3.

On December 6, 2012, DHS received a Child Protective Services (CPS) report alleging that I.B.B. had disclosed that she had suffered ongoing sexual abuse by Father involving inappropriate touching and watching her dress and undress. N.T., 3/18/15, at 33; DHS Exhibit 18 at 5. In addition,

_____

[4] The stay away order remained in effect during the Children's dependency. The order directed Father to refrain from telephone contact, verbal contact, third party contact, eye contact, written contact, and physical contact. In addition, the order directed Father to refrain from "any and all intimidation personally or by family and/or friends." N.T., 3/18/15, at 101, DHS Exhibit 8. The trial court maintained the stay away order at Father's permanency review hearings. Trial Court Opinion, 9/22/15, at 4. At a permanency hearing on February 19, 2015, the trial court maintained the stay away order, including posting pictures of the Children on social media. *Id.*

DHS received a CPS report on December 12, 2012, alleging that the remaining female children were similarly sexually abused by Father.[5] *Id.* at 37; DHS Exhibit 19 at 5. DHS classified both reports as "indicated."[6] N.T., 3/18/15, at 33; 38.

On February 28, 2013, Father was arrested and charged with endangering the welfare of children, simple assault, recklessly endangering another person, aggravated assault, and corruption of minors.[7] Trial Court Opinion, 9/22/15, at 3-4. Thereafter, on June 25, 2013, DHS received a CPS report alleging that Father, who was out of prison on bail, had made threatening telephone calls to B.M.B., who was then ten years old. N.T., 3/18/15, at 50-51; DHS Exhibit 22.

On November 14, 2013, DHS filed petitions for the involuntary termination of Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). A hearing occurred on March 18, 2015,

_____

[5] The CPS report included A.B., who was not Father's natural child, as well as B.M.B. and C.D.B. DHS Exhibit 19. The DHS caseworker, Renee Morgan, testified that A.B. made these allegations, and they were corroborated by her two younger sisters. N.T., 3/18/15, at 37.

[6] An "indicated report" is defined as: "[a] report of child abuse made pursuant to this chapter if an investigation by the department or county agency determines that substantial evidence of the alleged abuse exists[.]" 23 Pa.C.S.A. § 6303.

[7] At the time of the subject proceedings, Father was awaiting trial on the charges. He remained out of prison on bail.

during which DHS presented the testimony of its caseworker, Renee Morgan, and Colleen Geatz, an employee of the Philadelphia Children's Alliance (PCA), who is an expert in child abuse, and who interviewed I.B.B., B.M.B., C.D.B., and A.B. with respect to their physical and/or sexual abuse allegations against Father. Father did not present any evidence.

On March 18, 2015, the trial court entered its decrees involuntarily terminating Father's parental rights. On April 17, 2015, Father filed timely notices of appeal and concise statements of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(a)(2)(i). This Court consolidated the appeals *sua sponte*. **See generally** Pa.R.A.P. 513. On September 22, 2015, the trial court filed its Rule 1925(a) opinion.

On appeal, Father presents the following issues for our review.

> 1. Whether the [t]rial [c]ourt erred in allowing into evidence, throughout the course of the proceedings, the [] Children's "[o]ut-of-[c]ourt [s]tatements"[?]
>
> 2. Whether the [t]rial [c]ourt erred in allowing into evidence testimony pertaining to a number of reports created by [DHS], on the basis that those reports were all "[b]usiness [r]ecord"[?]
>
> 3. Whether the [t]rial [c]ourt erred in admitting into evidence Exhibit[] numbers "2" through "5," each titled "Order for Protective Custody"[?]
>
> 4. Whether the [t]rial [c]ourt erred in admitting into evidence testimony contained within investigatory reports/psychological evaluations presented through second hand witnesses[?]
>
> 5. Whether the [t]rial [c]ourt erred in allowing into evidence conclusions made by [DHS], in declaring

reports of child abuse against [Father] as having been "Indicated"[?]

6. Whether the evidence was sufficient to establish [Father] had evidenced a settled purpose of relinquishing parental claim, or having refused or failed to perform parental duties[?]

7. Whether the evidence was sufficient to establish that [Father] had refused or failed to perform parental duties, caused [the] [C]hildren to be without essential parental care, that conditions having led to placement had continued to exist, or finally that any of the above could not have been remedied [?]

Father's Brief at 5.

We consider Father's issue mindful of our well-settled standard of review.

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted). The burden is upon the petitioner to prove by clear and convincing evidence that the asserted statutory grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009).

In his first through fifth issues on appeal, Father argues that the trial court erred in its evidentiary rulings on the basis of inadmissible hearsay. The Pennsylvania Rules of Evidence define hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Pa.R.E. 801(c); *Commonwealth v. McCrae*, 832 A.2d 1026, 1034 (Pa. 2003), *cert. denied*, 543 U.S. 822 (2004). In *McCrae*, our Supreme Court stated that

Rule 802 provides, "[h]earsay is not admissible except as provided by these rules [the Rules of Evidence], other rules prescribed by the Pennsylvania Supreme Court, or by statute." ***McCrae****, supra* at 1034. Rule 803 provides numerous exceptions to the rule against hearsay, the following ones of which are relevant in this case.

> **Rule 803. Exceptions to the Rule Against Hearsay--Regardless of Whether the Declarant is Available as a Witness**
>
> The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:
>
> …
>
> **(3) Then-Existing Mental, Emotional, or Physical Condition.** A statement of the declarant's then-existing state of mind (such as motive, intent or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will.
>
> …
>
> **(6) Records of a Regularly Conducted Activity.** A record (which includes a memorandum, report, or data compilation in any form) of an act, event or condition if,
>
>> (A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;
>>
>> (B) the record was kept in the course of a regularly conducted activity of a "business", which term includes business, institution, association, profession, occupation, and calling

of every kind, whether or not conducted for profit;

(C) making the record was a regular practice of that activity;

(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

(E) neither the source of information nor other circumstances indicate a lack of trustworthiness.

…

**(25) An Opposing Party's Statement.** The statement is offered against an opposing party and:

(A) was made by the party in an individual or representative capacity;

(B) is one the party manifested that it adopted or believed to be true;

(C) was made by a person whom the party authorized to make a statement on the subject;

(D) was made by the party's agent or employee on a matter within the scope of that relationship and while it existed; or

(E) was made by the party's coconspirator during and in furtherance of the conspiracy.

…

Pa.R.E. 803(3), (6), (25).

We review Father's first through fifth issues according to the following principles.

> When we review a trial court ruling on admission of evidence, we must acknowledge that decisions on admissibility are within the sound discretion of the trial court and will not be overturned absent an abuse of discretion or misapplication of law. In addition, for a ruling on evidence to constitute reversible error, it must have been harmful or prejudicial to the complaining party. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused.

*Phillips v. Lock*, 86 A.3d 906, 920 (Pa. Super. 2014), *quoting **Stumpf v. Nye***, 950 A.2d 1032, 1035-1036 (Pa. Super. 2008), *appeal denied*, 962 A.2d 1198 (Pa. 2008).

In his first issue, Father argues that the trial court erred in admitting the Children's out-of-court statements. Father's Brief at 13. Specifically, Father argues the trial court erred to the extent it found that the statements were admissible pursuant to Pa.R.E. 803(25), as statements by party opponents. *Id.* Father cites *In re M.T.*, 607 A.2d 271 (Pa. Super. 1992), in which we concluded that the trial court erred in admitting certain statements by the children as party admissions. *Id.* at 12. In *M.T.*, we explained that, although the children are parties in a termination proceeding, this exception to the hearsay rule does not apply for the following reason.

- 11 -

> [T]hen hearsay statements would also be admissible in criminal or dependency proceedings in which children likewise may be deemed parties to the action. Further, there would have been no need for the legislature to enact special statutory exceptions for criminal or dependency proceedings if a child's hearsay statements were admissible pursuant to this exception.[8]

**M.T.**, **supra** at 280–281. Further, Father argues that the trial court erred to the extent it admitted the Children's statements pursuant to Pa.R.E. 803(3), as a then-existing mental, emotional, or physical condition, because the Children's statements had not been made spontaneously but were elicited in interviews by DHS and PCA.[9] Father's Brief at 13.

The statements appearing in the hearing transcript are found in the testimony of the DHS caseworker, Renee Morgan, that "the children have expressed to me that they are afraid of their father"; "the children have reported to me feeling harassed by the father"; and on direct examination she testified that the Children are "afraid of going back with [F]ather[.]" N.T., 3/18/15, at 43-44, 52-53. Further, Ms. Morgan stated on cross-

---

[8] 42 Pa.C.S.A. § 5986 provides that, upon requisite preliminary findings by the trial court, "[a] statement made by a child describing acts and attempted acts of indecent contact, sexual intercourse or deviate sexual intercourse performed with or on the child by another, not otherwise admissible by statute or court ruling, is admissible in evidence in a dependency proceeding initiated under Chapter 63 (relating to juvenile matters)[.]" 42 Pa.C.S.A. § 5986(a).

[9] Father does not refer us to the places in the record where the asserted errors occurred. **See** Pa.R.A.P. 2119(c). However, because the trial court reviewed Father's assertions, we do not deem this issue waived.

examination by the Child Advocate that "[a]ll the children consistently tell [her] the same stories regarding the severe physical abuse they suffered at the hands of their father;"[10] and that the Children "want to be adopted by maternal grandparents[.]" *Id.* at 63-65. In addition, appearing in the hearing transcript are the female children's disclosures in their interviews with the PCA child abuse expert, Colleen Geatz, of Father's physical and/or sexual abuse of them.[11] *Id.* at 74-77, 78-79, 81-85.

With respect to the Children's statements that they are afraid of Father and feel harassed by him, the trial court explained in its Rule 1925(a) opinion that those statements were not offered to prove the truth of the statements, but rather to identify the reason why DHS did not recommend visitation between Father and the Children. Therefore, the trial court concluded that the statements were not hearsay. Trial Court Opinion, 9/22/15, at 14. Our review of the hearing transcript supports the court's conclusion. *See generally* N.T., 3/18/15, at 43-47.

_____

[10] The trial court found this statement admissible as a party admission. N.T., 3/18/15, at 43. Based on this Court's decision in *M.T.*, we are constrained to disagree. However, the trial court also noted that the statements were not admitted for their truth, but to explain the basis for Ms. Morgan's recommendation that Father not be allowed unsupervised visits with the Children. *Id.* Accordingly, the statements were not hearsay. *See generally* Pa.R.E. 801(c)(2).

[11] Father's counsel objected to all of the foregoing statements during the termination hearing.

With respect to Ms. Morgan's testimony regarding the remaining statements of the Children, the trial court explained that it overruled Father's objections "due to the fact that the statements expressed a then existing mental emotional condition under Pa.R.E. 803(3)." Trial Court Opinion, 9/22/15, at 14. Specifically, the trial court found that the statements demonstrated the Children's fear of Father, and that they "were made in a natural manner and not under suspicious circumstances." *Id.* Likewise, with respect to Ms. Geatz's testimony regarding the female children's disclosures, the trial court explained that it overruled Father's objections because the statements expressed a then mental state, namely, fear of Father. Trial Court Opinion, 9/22/15, at 14-15. Upon review, we discern no abuse of discretion by the trial court in concluding that the foregoing statements were admissible pursuant to Pa.R.E. 803(3). *See Commonwealth v. Luster*, 71 A.3d 1029, 1041 (Pa. Super. 2013) (*en banc*) (holding that the victim's statements regarding being fearful of defendant were properly admitted under the state of mind exception to the hearsay rule), *appeal denied*, 83 A.3d 414 (Pa. 2013); *see also Commonwealth v. Kunkle*, 79 A.3d 1173, 1185 (Pa. Super. 2013) (same), *appeal denied*, 114 A.3d 1039 (Pa. 2015). We adopt the court's reasoning as articulated in its Rule 1925(a) opinion as dispositive of Father's argument. *See* Trial Court Opinion, 9/22/15, at 14-15. As such, Father's first issue fails.

In his second issue, Father asserts that the trial court erred in admitting into evidence "certain … GPS and CPS reports" because they do not fall under the business record exception to the hearsay rule pursuant to Pa.R.E. 803(6).  Father's Brief at 14.  Specifically, Father asserts that the "case record may have been compiled within the regular course of business," but that "a primary function of maintaining the record, would have been for the purposes of litigation."  *Id.* at 15, *citing* **Neuman v. Pittsburgh R. Co.**, 141 A.2d 581 (Pa. 1958) (discussing the railroad business and when records are considered made in the "regular course of business" under the Uniform Business as Evidence Act).  First, we note that Father has failed to specify which reports should have been ruled inadmissible and on this basis alone we could find waiver.  **See In re W.H.**, 25 A.3d 330, 339 n.3 (Pa. Super. 2011) (stating that issues are waived if appellate brief fails to provide meaningful discussion with citation to relevant authority), *appeal denied*, 24 A.3d 364 (Pa. 2011); **see also generally** Pa.R.A.P. 2119(b).  Further, as the trial court adequately addressed in its Rule 1925(a) opinion, the GPS and CPS reports Father generally refers to were prepared during the regular course of business by agency workers, and is therefore not prepared in anticipation of litigation.  **See** Trial Court Opinion, 9/22/15, at 12–13.  Therefore, in the absence of any contrary assertion by Father, we conclude the trial court did not abuse its discretion in concluding the reports made by

GPS and CPS were admissible under the business records exception. Accordingly, Father's second issue fails.

In his third issue, Father argues that the court erred in admitting DHS Exhibits 2–5, all of which are orders for protective custody (OPC).[12] Father asserts that the orders "are entirely *ex parte*." Father's Brief at 15. Further, Father asserts in his fourth issue that, "any information provided indirectly through documents and reports introduced into evidence through exhibits, would not have been subject to the 'business record exception' …." **Id.** at 15–16. In his fifth issue, Father argues that the trial court erred in admitting into evidence the "conclusions made by [DHS], in declaring [r]eports of child abuse against [Father] as having been "[i]ndicated." Father's Brief at 16. Father asserts that an "[i]ndicated [r]eport" is a wholly [] ex parte determination made by … [DHS]." **Id.** In his brief, Father failed to provide any discussion or citation to legal authority with respect to his third, fourth, or fifth issues. Therefore, we conclude that these issues are waived for want of development. **See W.H.**, **supra**; **see also generally** Pa.R.A.P. 2119(b).

We next turn to Father's remaining issues, wherein he asserts that the trial court had insufficient evidence to terminate his parental rights pursuant

___

[12] Exhibits 2-5 were dated September 14, 2012, and involved A.B., who is not a subject of this appeal, as well as I.B.B., C.D.B., and B.M.B. We note that Exhibits 6 and 7, also dated September 14, 2012, were OPC's for Father's sons, F.I.R., Jr., and C.K.R.

to Section 2511(a)(1) and (2). Upon review, we conclude that the trial court properly terminated Father's parental rights pursuant to Section 2511(a)(2) and (b), which provide as follows.[13]

> **§ 2511. Grounds for involuntary termination**
>
> **(a) General Rule.—**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> …
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> …
>
> **(b) Other considerations**.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to

---

[13] This Court need only agree with any one subsection of Section 2511(a), along with Section 2511(b), in order to affirm the termination of parental rights. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*), *appeal denied*, 863 A.2d 1141 (Pa. 2004). Because we conclude that the court properly terminated Father's parental rights pursuant to Section 2511(a)(2), we need not review his issue with respect to Section 2511(a)(1).

> subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b).  The grounds for termination of parental rights under Section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct.  To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties.  **In re A.L.D.**, 797 A.2d 326, 337 (Pa. Super. 2002).

Further, this Court has stated that a parent is required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities.  **Id.**  A parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous.  **Id.** at 340.

With respect to Section 2511(b), the requisite analysis is as follows.

> Subsection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child.  In **In re C.M.S.**, 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child."  In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond.  **Id**.  However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists.  **In re K.Z.S.**, 946 A.2d 753, 762-63 (Pa. Super. 2008).  Accordingly, the extent of the bond-effect

analysis necessarily depends on the circumstances of the particular case. *Id*. at 63.

*In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010).

On appeal, Father argues that the evidence is insufficient to demonstrate that he "is lacking in the capacity to parent." Father's Brief at 19. We disagree.

Ms. Morgan testified that Father attended mental health services, anger management workshops, and parenting classes. N.T., 3/18/15, at 42. Nevertheless, the record reveals that the trial court maintained the stay away order throughout this case. As such, Father has been unable to remedy his parental incapacity since September 2012, when the order first went into effect.

In *In re A.D.*, 93 A.3d 888 (Pa. Super. 2014), this Court held as follows with respect to orders prohibiting a parent from contacting his or her child.

> Just as our Supreme Court discussed a parent's incapacity relative to long-term incarceration in *In re Adoption of S.P.*, [47 A.3d 817, 830 (Pa. 2012)], parental incapacity caused by a no-contact order is not only relevant to a court's conclusion that grounds for termination exist under § 2511(a)(2), but where, as here, the order is required to protect the children from further sexual abuse at the hands of the excluded parent, we find that it is dispositive.

*Id.* at 897. Pursuant to *A.D.*, we conclude that Father's repeated behaviors and failure to be present for the Children due to the stay away order has caused the Children to be without essential parental care, control, or

subsistence necessary for their physical and mental well-being. Further, the conditions and causes of Father's parenting incapacity cannot be remedied as long as the stay away order remains in place.

Furthermore, the trial court reasoned that Father's conduct warranted termination for the following reasons.

> Several instances of conduct evidence of Father's lack of parental skills, such as Father's bad judgment to continue to create an intimidation environment in the Children's community[] and via Facebook and YouTube, despite a court order prohibiting him to post information regarding his Children on the internet ….[14]
>
> The record has established that Father's actions have not improved his relationship with his Children, as required by the FSP ….

Trial Court Opinion, 9/22/15, at 9 (citations to record omitted).

The testimony of Ms. Morgan during direct examination supports the findings of the court, as follows.

> Q. So why hasn't [F]ather shown you the quality [of] his parenting ha[s] improved?
>
> A. Several reasons. The children report to me that they have seen [] [F]ather out in the community and
>
> …
>
> A. – they were being shadowed.

---

[14] The Honorable Joseph L. Fernandes presided over the involuntary termination hearing, as well as over most of the dependency hearings. Judge Fernandes issued the February 19, 2015 order, discussed above, prohibiting Father from posting pictures of the Children on social media.

…

A. Recent reports from the children reflect that the children feel like they're being harassed and stalked by [] [F]ather out in public. They see him places that they shouldn't be seeing him. For instance, in the subways when they're coming home from school. And they have also reported that they have been indicated on Facebook postings and on other internet medias where they're [sic] names are being brought up [by] [] their [F]ather and they feel intimidated and harassed by these actions by [] [F]ather.

…

Q. Has Judge Fernandes addressed the issue of children being posted on Facebook and [F]ather discussing the children in public?

A. He has.

Q. And what did the [J]udge say about that?

A. He ordered that be restricted.

Q. And to your knowledge has [F]ather done so even as recently as this morning?

A. Yes, that's true.

Q. And is that in direct violation of the Judge's order?

A. It is.

N.T., 3/18/15, at 48-50. In addition, Ms. Morgan testified that, "the children are struggling with chronic anxiety, depression and other disorders as a result of Post[-]Traumatic … stress syndromes." *Id.* at 51. Based on the foregoing testimonial and documentary evidence, we discern no abuse of

discretion by the trial court in terminating Father's parental rights pursuant to Section 2511(a)(2).

Although Father does not raise an issue with respect to Section 2511(b), we review it in light of the requisite bifurcated analysis. ***See generally In re C.L.G.***, 956 A.2d 999, 1010 (Pa. Super. 2008) (*en banc*). In this case, there is no record evidence of a bond between the Children and Father. Therefore, it was reasonable for the trial court to infer that no bond exists. ***See J.M.***, ***supra***. Indeed, Ms. Morgan testified that the Children will not suffer irreparable harm if Father's parental rights are terminated. N.T., 3/18/15, at 59-62.

Further, in ***T.S.M.***, our Supreme Court stated that, "[c]ommon sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." ***T.S.M.***, ***supra*** at 268. Moreover, the Court directed that, in weighing the bond considerations pursuant to Section 2511(b), "courts must keep the ticking clock of childhood ever in mind." ***Id.*** at 269. The ***T.S.M.*** Court observed that, "[c]hildren are young for a scant number of years, and we have an obligation to see to their healthy development quickly. When courts fail … the result, all too often, is catastrophically maladjusted children." ***Id.***

Instantly, Ms. Morgan testified that the Children are thriving in their placement with their maternal grandparents, and that they desire to be

adopted by them. N.T., 3/18/15, at 57-58, 65. Further, Ms. Morgan testified that the Children continue to fear Father and struggle with "chronic anxiety, depression and other disorders as a result of Post[-]Traumatic … stress syndromes." *Id.* at 51-53. As such, the evidence overwhelmingly demonstrates that terminating Father's parental rights would best serve the developmental, physical, and emotional needs and welfare of the Children pursuant to Section 2511(b).

Based on the foregoing, we conclude the trial court did not abuse its discretion in involuntarily terminating Father's parental rights to the Children. *See T.S.M.*, *supra*. Accordingly, we affirm the March 18, 2015 decrees involuntarily terminating Father's parental rights.

Decrees affirmed.

Judge Strassburger joins the memorandum.

Judge Olson concurs in the result.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/21/2016