J-A12035-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DANIEL M. DEAUGUSTINE | : | |
| | : | |
| Appellant | : | No. 1486 WDA 2019 |

Appeal from the Judgment of Sentence Entered May 7, 2019,
in the Court of Common Pleas of Westmoreland County,
Criminal Division at No(s):  CP-65-CR-0003637-2015.

BEFORE:   KUNSELMAN, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY KUNSELMAN, J.:                    **FILED JULY 31, 2020**

Daniel M. DeAugustine appeals from the judgment of sentence imposed following his conviction of involuntary deviate sexual intercourse (victim less than sixteen years of age), aggravated indecent assault without consent, indecent assault without consent (victim less than sixteen years of age), and unlawful contact with a minor.[1]  We affirm.

The instant appeal arises out of an investigation regarding allegations of sexual assault by DeAugustine on his minor female neighbor (hereinafter "the victim").  In 2015, as a result of the investigation, DeAugustine was charged with the above-described offenses.  In 2016, DeAugustine filed a

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] **See** 18 Pa.C.S.A. §§ 3123(a)(7); 3126(a)(1), (a)(8); 6318(a)(1).

motion to dismiss the charges pursuant to Pa.R.Crim.P. 600. The trial court denied the motion. In 2018, the matter proceeded to trial, but ended in a mistrial. However, a second trial took place in 2019.

At the second trial, the victim testified that in April of 2015, she lived in Greensburg, Pennsylvania, with her mother, stepfather and three brothers. Their residence was located diagonally to DeAugustine's residence, where he resided with his wife and children. The victim became friends with DeAugustine's daughter, "A." The girls would play out in a field by their houses.

The first time that the victim went over to DeAugustine's residence was approximately April 11, 2015, when the victim was 15 years old. On that date, while the victim was waiting outside of DeAugustine's residence for A. to come back outside, DeAugustine asked the victim to sit next to him on a bench on the back porch. DeAugustine then handed the victim a drink that contained alcohol, moved closer to her, lifted her onto his lap and asked her "do you want me to show you the ropes course." N.T. Trial, 2/4/19, at 82. The victim said something joking around to try to change the subject and jumped off of the DeAugustine's lap "real quick" because she did not want to be there. *Id*. at 83.

The victim explained that she then went into DeAugustine's residence to help A. with the laundry and to be near her. DeAugustine followed the girls into the house and went into the kitchen which was adjacent to the living room

where the girls were folding laundry. At some point, A. went downstairs to the basement. The victim tried to go with her, but DeAugustine held her back, pulled her over to him and forcefully kissed her. The victim tried to push him away, but DeAugustine only released her when A. came back upstairs. The victim then testified that she and A. went downstairs to the basement to see A.'s pets. DeAugustine followed the girls down to the basement. DeAugustine then told A. to go back upstairs to get something. The victim tried to follow A. up the stairs, but DeAugustine grabbed her by the arm and pulled her back down the steps. The victim testified that DeAugustine forced her to stand in one spot, pulled down her pants and used his tongue on her genitals. The victim stated she tried to push DeAugustine away, but wasn't able to do so. A. then started to come back downstairs and DeAugustine stopped touching the victim. The victim stated that she just tried to act normal upon seeing A. The victim indicated that A. did not see what was happening nor did she tell A. what had happened. The victim then left DeAugustine's residence.

The victim further testified that right after her sixteenth birthday, on approximately April 23 or 24, 2015, A. asked her to have a sleepover. After expressing reluctance, the victim agreed to sleep over at DeAugustine's residence believing that A.'s mother, DeAugustine's wife, would also be present. However, DeAugustine's wife was not at the residence during the sleepover. The victim testified that during the evening DeAugustine gave her a drink that contained alcohol and pop. The victim stated nothing else

happened with DeAugustine until the next morning. She testified that in the morning when she was trying to get some food, DeAugustine pulled her into a side room and started touching her and kissing her again. At some point, DeAugustine let her go, and she went with A. and they began putting on makeup. After the girls put on makeup, they ran around the neighborhood, showing their work. They came back to DeAugustine's house to wash off. The victim explained that A. was in the basement bathroom washing up and she went to the upstairs bathroom to do the same. The victim stated that she tried to lock the bathroom door behind her, but DeAugustine pulled the door open. DeAugustine entered the bathroom with the victim and put his fingers in her vagina. The victim indicated that she pushed away from DeAugustine and tried to get way, and DeAugustine eventually stopped when A. came upstairs. The victim testified she then got dressed and left DeAugustine's residence. The only person that the victim told about the sexual abuse by DeAugustine was her friend, Kyle Cordova. The victim later reported the sexual abuse to a doctor after she passed out one evening and was taken to Children's Hospital in Pittsburgh. The victim indicated that at no time during the events with DeAugustine did she consent to him touching her.

After the victim's cross examination, the jury exited the courtroom and proceeded to the jury room down the hallway. As the jury was leaving the courtroom, the victim had an emotional outburst. Defense counsel moved for a mistrial. The trial court denied the motion, but expeditiously directed the

Commonwealth to move the victim in order the shield the jury. When the trial reconvened, the trial court provided a curative instruction to the jury admonishing them not to permit any sympathy that they may feel for any witness or for the victim to divert them from their sworn duty to view all of the evidence fairly and impartially when deliberating on their verdict.

On February 6, 2019, the jury convicted DeAugustine on all charges. On May 7, 2019, the trial court sentenced DeAugustine to an aggregate prison term of four to eight years followed by two years of probation. DeAugustine filed a timely post-sentence motion which the trial court denied. This timely appeal followed. Both DeAugustine and the trial court complied with Pa.R.A.P. 1925.

DeAugustine raises the following issues for our review:

1. The court erred in not granting a mistrial following the victim's loud and emotional outburst as the jury was exiting the courtroom immediately after her testimony.

2. [DeAugustine] was denied his right to a speedy trial as assured by both the Pennsylvania and United States Constitution as well as the Pennsylvania Rule of Criminal Procedure Rule 600.

3. The court erred by determining that the verdict was not against the weight of the evidence.

DeAugustine's Brief at 5 (unnecessary capitalization and references to the record omitted).

In his first issue, DeAugustine contends that the trial court erred in not granting a mistrial following the victim's outburst as the jury was exiting the

courtroom immediately after her testimony. The following standards govern our review of the denial of a motion for mistrial:

> In criminal trials, declaration of a mistrial serves to eliminate the negative effect wrought upon a defendant when prejudicial elements are injected into the case or otherwise discovered at trial. By nullifying the tainted process of the former trial and allowing a new trial to convene, declaration of a mistrial serves not only the defendant's interest but, equally important, the public's interest in fair trials designed to end in just judgments. Accordingly, the trial court is vested with discretion to grant a mistrial whenever the alleged prejudicial event may reasonably be said to deprive the defendant of a fair and impartial trial. In making its determination, the court must discern whether misconduct or prejudicial error actually occurred, and if so, . . . assess the degree of any resulting prejudice. Our review of the resulting order is constrained to determining whether the court abused its discretion. Judicial discretion requires action in conformity with [the] law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason.

*Commonwealth v. Jaynes*, 135 A.3d 606, 614-15 (Pa. Super. 2016).

Further, "[w]hether and to what extent relief is due from an incident such as an emotional outburst in the courtroom is within the discretion of the trial court, and unless the unavoidable effect of the incident is to deny the defendant a fair trial, there is no error." *Commonwealth v. Bracey*, 342, 662 A.2d 1062, 1072 (Pa. 1995) (finding no basis upon which to conclude that the unavoidable effect of certain minor courtroom occurrences, including the victim's stepmother crying softly or the victim's father having emotional difficulty while testifying, was to deny appellant a fair trial).

DeAugustine argues that the victim was the sole witness for the Commonwealth, and it was the factfinder's burden to determine her credibility and believability regarding the allegations. According to DeAugustine, her outburst was not brief nor did it consist of merely sobbing and a little bit of moaning, but rather included sounds of vomiting, crying, moaning, and other emotions that continued for at least a minute or two as the jury left the courtroom and continued out in the hallway. DeAugustine maintains that the jurors then sat in the jury room for twenty-eight minutes after witnessing this outburst. DeAugustine asserts that the unavoidable effect of the victim's outburst was to deny DeAugustine a fair trial. DeAugustine concedes that the trial court did provide a curative instruction to the jury. However, DeAugustine claims that, under the circumstances of the present case, he could not receive a fair trial even with the curative instruction.

The trial court determined that DeAugustine's motion for mistrial was properly denied. It reasoned that "the jury's momentary exposure to [the victim's] outburst did not have an unavoidable effect of depriving . . . DeAugustine of a fair and impartial trial, and any prejudice to . . . DeAugustine was effectively cured by the court's cautionary instruction which occurred immediately after the proceedings reconvened." Trial Court Opinion, 9/25/19, at 7. The cautionary instruction by the trial court provided as follows:

> So before you took your recess or as you were walking back to the jury room, I'm sure it was obvious to some of you that the witness who had testified before you left the courtroom had sort of an emotional reaction I'll call it. Just her behavior was a little

unusual. And if you'll recall what I told you yesterday during my opening instruction was that you should not permit any sympathy that you feel for any of the witnesses or for the victim or for the defendant to divert you from your sworn duty to consider all of the evidence fairly and impartially when deliberating upon your verdict. I have to remind you and very strictly caution you that you need to follow that instruction that I gave yesterday with regard to that emotional outburst. So what I'm also going to do is I'm going to direct that you not consider that outburst as any evidence of any fact that the Commonwealth has presented with regard to the witness's testimony. All right?

N.T. Trial, 2/4-6/19, at 169.

We discern no abuse of discretion by the trial court in denying the request for a mistrial. DeAugustine has not convinced us that the victim's momentary emotional outburst deprived him of a fair and impartial trial, or that the jury in any way disregarded the trial court's cautionary instruction. *See Commonwealth v. McCrae*, 832 A.2d 1026, 1034 (Pa. 2003) (noting that the jury is presumed to have followed the instructions of the trial court). Accordingly, no relief is due on DeAugustine's first issue.

In his second issue, DeAugustine superficially argues that the trial court erred in denying his Rule 600 motion.[2] However, he makes no specific arguments regarding the progression and timing of his case. DeAugustine

---

[2] Rule 600 provides for dismissal of charges only in cases in which the defendant has not been brought to trial within the term of the adjusted run date, after subtracting all excludable and excusable time. *See Commonwealth v. Moore*, 214 A.3d 244, 248-49 (Pa. Super. 2019). The adjusted run date is calculated by adding to the mechanical run date, *i.e.*, the date 365 days from the complaint, both excludable time and excusable delay. *Id*.

does not reference any purported delays and fails to identify any alleged Rule 600 violation by the Commonwealth. Finally, DeAugustine provides no citations to the transcript of the Rule 600 hearing, and fails to identify any specific Rule 600 ruling by the trial court which he seeks to challenge. *See Commonwealth v. Robbins*, 900 A.2d 413, 415 (Pa. Super. 2006) (holding that our scope of review of a Rule 600 ruling is limited to the evidence on the record of the Rule 600 evidentiary hearing and the findings of the trial court). Accordingly, we deem DeAugustine's second issue waived on appeal. *See Commonwealth v. Heggins*, 809 A,2d 908, 912 n.2 (Pa.Super. 2002) (holding that an issue identified on appeal but not developed in appellant's brief is abandoned and therefore waived).

In his third issue, DeAugustine contends that the trial court erred in rejecting his claim that the verdict was against the weight of the evidence. The following legal principles apply when a challenge to the weight of the evidence supporting a conviction is presented to the trial court:

> A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that

- 9 -

notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

***Commonwealth v. Widmer***, 744 A.2d 745, 751-52 (Pa. 2000) (citations, footnotes and quotation marks omitted, emphasis added).

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

***Commonwealth v. Clay***, 64 A.3d 1049, 1054-55 (Pa. 2013) (emphasis in original, internal citations omitted). The finder of fact is the exclusive judge of the weight of the evidence as the fact finder is free to believe all, part, or none of the evidence presented and determines the credibility of the witnesses. ***Commonwealth v. Boyd***, 73 A.3d 1269, 1274 (Pa.Super. 2013) (*en banc*). Therefore, we will reverse a verdict and grant a new trial only where the verdict is so contrary to the evidence as to shock one's sense of justice. ***Id***.

DeAugustine contends that the jury assigned greater weight to the victim's emotional outburst than to any of the discrepancies regarding her prior statements and testimony. DeAugustine claims that the jury ignored all of the contradictions in the victim's statements.

The trial court considered DeAugustine's weight challenge and determined that a new trial was not warranted. It reasoned as follows:

> Based upon this court's review of the entire record, this court does not find that the jury's verdict is inconsistent or so contrary to the evidence as to shock this court's sense of justice. The jury was certainly capable of determining whether to believe all, part, or none of the evidence with respect to whether the Commonwealth met its burden at each count and to determine the credibility of each witness.
>
> In the present case, [the victim's] testimony revealed a detailed account of sexual assaults that were alleged to have been committed against her by . . . DeAugustine. Despite inconsistencies, the court finds that [the victim's] testimony alone provided sufficient evidence to establish the crimes, with which . . . DeAugustine was convicted, beyond a reasonable doubt. The court finds that a lack of corroboration is immaterial to the specific offenses charged because the jurors appeared to believe [the victim's] testimony. The jury was certainly capable of determining the credibility of the witnesses and determining what evidence to believe. As such, the court finds that all of the evidence presented to the jury was in support of the verdict rendered.

Trial Court Opinion, 9/25/19, at 5-6 (unnecessary capitalization omitted).

We discern no abuse of discretion by the trial court in rejecting DeAugustine's weight challenge. Further, giving the gravest consideration to the findings and reasons advanced by the trial judge, as we must, we conclude that DeAugustine's final issue warrants no relief.

Having concluded that none of DeAugustine's issues entitles him to relief, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  7/31/2020